In re Timothy A. **HOBLITZELL**, Debtor.

**Linda Ekstrom STANLEY, United States Trustee, Plaintiff,**

v.

**Timothy A. HOBLITZELL, Defendant.**

**Bankruptcy No. 96–93899–A–7.
Adversary No. 97–9083.**

United States Bankruptcy Court,
E.D. California,
Modesto Division.

Aug. 4, 1998.

212

Edmund Gee, U.S. Department of Justice, Office of United States Trustee, Fresno, California, for Linda Ekstrom Stanley, United States Trustee.

James E. Ganzer, Ganzer & Williams, Stockton, California, for Timothy A. Hoblitzell.

## MEMORANDUM DECISION

MICHAEL S. MCMANUS, Bankruptcy Judge.

The United States Trustee has filed an adversary proceeding objecting to the discharge of the chapter 7 debtor under 11 U.S.C. § 727(a)(2)(B), (a)(3), and (a)(4)(A). The United States Trustee's objections will be sustained and the debtor's discharge will be denied.

### I. Facts

On October 2, 1996, the defendant and debtor, Timothy A. Hoblitzell, filed a chapter 13 petition. He timely filed schedules and a statement of financial affairs, both executed under penalty of perjury, as required by Fed.R.Bankr.P. 1007(b)(1). Schedule B listed a 24.5% stock ownership interest in "Harvest Grove, Inc.," and a 3.5% partnership interest in "Thermal Energy." The statement of financial affairs, question 10, indicated that the defendant transferred no property in the year prior to his petition.

The defendant's attempt at rehabilitation under chapter 13 was short-lived. On December 16, 1996, he voluntarily converted his case to one under chapter 7.

Approximately one month later, the defendant filed an amendment to Schedule B. The amendment deleted any reference to his stock interest in Harvest Grove, Inc., and to his partnership interest in Thermal Energy. The defendant also amended his statement of financial affairs, stating at question 10 that he had sold his interests in Harvest Grove, Inc., and Thermal Energy in January 1996 to his brother, James Hoblitzell, for $2,000.00.

These contradictory statements under penalty of perjury piqued the interest of the United States Trustee. Her investigation revealed a wealth of information that was either omitted from the defendant's schedules and statement of financial affairs or was contradicted by the statements in them.

In addition to mischaracterizing his interest in Thermal Energy and Harvest Grove, Inc., these documents failed to disclose that the defendant held corporate officer positions in two entities, that the defendant had transferred a partnership interest in Kentucky House Energy Partnership, and that the defendant had operated a proprietorship known as Live Oak Insurance.

Thermal Energy Development Partnership (TEDP), a limited partnership, owns a biomass power plant located in Tracy, California. In 1996, it had assets of $45.3 million and gross income of $14.9 million. However, its assets are exceeded by its liabilities and in 1996 it had an operating loss.

Thermal Energy Development Corporation (TEDCO) is one of the limited partners of TEDP. It owns approximately 17% of the limited partnership. The defendant owned 1077.5 (10.775%) shares of TEDCO. The defendant claims that he transferred these shares to his brother on February 1, 1996, for $1,000.00. The defendant allegedly signed a bill of sale for the stock. Both parties also purportedly signed a repurchase agreement which permitted the defendant to reacquire the stock for a period in excess of fifty years by repaying the $1,000.00 plus interest.

Harvest Grove, Inc., is a California corporation. PacWest Resources, Inc., (PacWest) owns 490 (49%) of its shares. The defendant was an officer of PacWest and the owner of 990,000 (49.5%) of its shares. The defendant claims that he transferred these shares to his brother on February 1, 1996, for $1,000.00. Once again, the defendant allegedly signed a bill of sale for the stock and both parties signed a repurchase agreement which permitted the defendant to reacquire the stock for a period in excess of fifty years by repaying the $1,000.00 plus interest.

The defendant was the president and secretary of PacWest and was a vice-president of Harvest Grove.

In 1989, the defendant entered into a settlement agreement concerning his stock ownership in TEDCO. By virtue of this settlement agreement, if TEDCO or its assets are sold, the defendant could receive $500,000.00 for his stock.

On June 15, 1995, within two years of the petition, the defendant transferred a 5% partnership interest in Kentucky House Energy Partnership.

The defendant was the proprietor of Live Oak Insurance within two years of the petition. While the defendant testified that this business ceased operating in 1994, the defendant's tax returns for 1995 and 1996 show that the business was still generating income and incurring expenses in those years.

The defendant's schedules and statement of financial affairs, then, were inaccurate in the following particulars:

(1) The original Schedule B reported a 3.5% interest in "Thermal Energy." In fact, the defendant owned 10.77% of TEDCO which owned 17% of TEDP. The defendant was not a partner of TEDP.

(2) Nor was the defendant accurate in his original Schedule B when he disclosed that he owned 24.5% of Harvest Grove, Inc. In reality, he owned 990,000 shares, or 49.5%, of PacWest. PacWest, in turn, owned 490 shares, or 49%, of Harvest Grove, Inc.

(3) The ownership of more than 5% of the equity in TEDCO and PacWest should also have been disclosed by the defendant at question 16a of the statement of financial affairs.

(4) In the original statement of financial affairs, the defendant failed to disclose the February 1, 1996, transfers to his brother for a total consideration of $2,000.00. It should have been disclosed at question 10 of the statement of financial affairs.

(5) Within the two years prior to the petition, defendant held a number of corporate posts. He was the president and secretary of PacWest effective December 8, 1995. He was a vice-president of Harvest Grove effective July 22, 1996. Both of these positions should have been disclosed at question 16a of the statement of financial affairs.

(6) If the defendant acquired the right to repurchase his interests in "Thermal Energy" and "Harvest Grove," this contract right should have been scheduled on Schedule B, at item 18, 20, or 33.

(7) The defendant's sale of his interest in Kentucky House Energy Partnership on June 15, 1995, did not need to be disclosed at question 10 of the statement of financial affairs because the sale occurred more than one year before the filing of the bankruptcy petition. The defendant's ownership of more than a 5% partnership interest within the two years prior to his petition, however, should have been disclosed at question 16a of the statement of financial affairs.

(8) The defendant did not disclose the proprietorship known as Live Oak Insurance or the right to receive residual commissions, either on Schedule B or at question 16a of the statement of financial affairs.

Also, the court does not believe that the stock interests in TEDCO and PacWest were transferred by the defendant to his brother. This is suggested by the defendant's failure to disclose the transfers in the original statement of financial affairs filed while the case was pending under chapter 13. In the original schedules, the defendant claimed to be the owner of the stock in both companies. It was only after the case was converted to chapter 7, when there was a possibility that a chapter 7 trustee would sell the equity interests, that the defendant claimed he no longer owned those interests.

The defendant and his brother tell conflicting stories about possession of the share certificates. At the first meeting of creditors the defendant testified that he gave the certificates to his brother. His brother denies that he ever received them. The defendant and his brother admit that they have not maintained a close relationship over the years. Even so, they offered significantly different versions of one of their recent but rare contacts.

Finally, the timing of the request that the stock transfers be recorded on the books of the corporations is suspicious. Neither the defendant nor his brother reported the transfers to the two corporations until after the conversion to chapter 7 and eleven months after the purported transfers.

## II. Discussion

This is a core proceeding over which the court has subject matter jurisdiction. 28

U.S.C. §§ 157(b)(2)(J) & 1334(b). The United States Trustee has standing to object to the discharge of a chapter 7 debtor. 11 U.S.C. § 307.

■ To prevail under 11 U.S.C. § 727(a)(2)(B), (a)(3), or (a)(4)(A), the trustee must establish the allegations of the complaint by a preponderance of the evidence. *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1297 (9th Cir.1994). Objections to discharge are to be literally and strictly construed against the objector and liberally construed in favor of the debtor. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir.1986).

### A.

Section 727(a)(4)(A) provides:

(a) The court shall grant the debtor a discharge unless—

. . .

(4) the debtor knowingly and fraudulently, in connection with the case—

(A) made a false oath or account. . . .

11 U.S.C. § 727(a)(4)(A).

■ Under section 727(a)(4)(A), the defendant's discharge will be denied if it is proven that: (1) the defendant made a statement under oath; (2) the statement was false; (3) the defendant knew the statement was false; (4) the defendant made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner)*, 208 B.R. 69, 71 (9th Cir. BAP 1997); *In re Coombs*, 193 B.R. 557, 563 (Bankr.S.D.Cal.1996). The debtor's knowledge and fraudulent intent may be shown by circumstantial evidence and inferred from the debtor's course of conduct. *Cf. In re Devers*, 759 F.2d 751, 753–754 (9th Cir.1985).

From the evidence the court infers that the defendant sought to maintain control over his shares in TEDCO and PacWest and keep them out of the hands of his creditors and the trustee. When the case was proceeding under chapter 13, that is, when the defendant was permitted to remain in possession of his assets, he reported that he owned the stock. When he converted his case to chapter 7 and faced the prospect of losing his shares to the trustee, he falsely reported that he had transferred his shares to his brother.

There were additional significant omissions and false statements in the schedules and the statement of financial affairs which are summarized above. These omissions and false statements are so intertwined with the defendant's recent business and financial affairs that the court infers his failure to make full and accurate disclosure in his statements under oath was intentional and was for the purpose of deceiving creditors and the trustee.

■ It is no defense that the defendant believed the TEDCO and PacWest stock to be worthless. *See e.g., In re Bailey*, 147 B.R. 157, 162–163 (Bankr.N.D.Ill.1992). First, the stock may not be worthless. By virtue of the state court settlement, if TEDCO is sold, the defendant could some day receive $500,000.00 for his stock. Someone might be willing to purchase the stock from the bankruptcy estate to capture this potential gain. If no buyer appears, the trustee might request pursuant to 11 U.S.C. § 554(c) that the stock not be abandoned when the case was closed, in order to preserve any subsequent sale proceeds for the benefit of creditors. *See e.g., In re Hart*, 76 B.R. 774, 777–778 (Bankr. C.D.Cal.1987). By failing to disclose the settlement and by falsely reporting the transfer of the stock, the defendant attempted to preclude either possibility.

■ But even if the court were to conclude that the stock was worthless, it was not for the defendant to decide which of his assets had to be disclosed. All assets must be scheduled so that "those interested in the case, in particular the trustee, have accurate information upon which they can rely without having to dig out the true facts or conduct examinations." *In re Bailey*, 147 B.R. at 162.

■ A disclosure's materiality is not determined by whether it may financially prejudice the estate or creditors. An omitted asset may ultimately be found to have no value, but its disclosure is necessary "if it aids in understanding the debtor's financial

affairs and transactions." *In re Coombs,* 193 B.R. at 564.

█ The defendant's false oaths enumerated above are material because they concern the defendant's assets, the disposition of assets, and the business dealings which caused or contributed to the defendant's insolvency.

The defendant's discharge will be denied because he knowingly made false oaths regarding material facts with the intent to deceive the trustee.

### B.

Section 727(a)(2)(B) provides:

(a) The court shall grant the debtor a discharge unless—

. . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

. . . .

(B) property of the estate, after the date of the filing of the petition. . . .

11 U.S.C. § 727(a)(2)(B). According to the Ninth Circuit:

"To deny a discharge under this section, the court must find that the Debtors harbored actual intent to hinder, delay or defraud a creditor or officer of the estate. . . . We infer the intent from the circumstances surrounding the transaction."

*In re Woodfield,* 978 F.2d 516, 518 (9th Cir. 1992).

█ Because the court has already concluded that the defendant falsely reported the transfer of the stock with the purpose of deceiving the trustee, it follows that his false oath, as well as the other misrepresentations enumerated above, were made with the intent of concealing property of the estate from the trustee.

If the court is wrong and the stock transfer did occur, the result will not change. In this event, the defendant failed to disclose in his schedules or his statement of financial affairs that he retained the right to repur-

chase the stock. Either way, an asset was concealed from the trustee and for this the defendant's discharge must be denied.

### C.

Section 727(a)(3) provides:

(a) The court shall grant the debtor a discharge unless—

. . . .

(3) the debtor has ... failed to keep or preserve any recorded information ... from which the debtor's financial condition ·or business transactions can be ascertained. . . .

11 U.S.C. § 727(a)(3).

█ The debtor produced only six documents during discovery regarding his marital dissolution proceeding, his bank accounts, and his investments in various partnerships and corporations. Given the complexity of the defendant's business dealings, his lack of records is astounding. When challenged regarding this on cross examination, he stated that he was not a "detail" person.

The defendant's failure to keep records goes beyond mere inattention to detail. His failure to keep and preserve basic records such as bank statements, as well as his failure to make complete and accurate disclosure in his schedules and the statement of financial affairs, was not only unreasonable, it betrays a deliberate attempt to hinder and delay the trustee in his efforts to investigate the defendant's financial affairs.

The defendant's discharge shall also be denied pursuant to 11 U.S.C. § 727(a)(3).

### III. Conclusion

For the foregoing reasons, the court will enter judgment denying the discharge of the debtor pursuant to 11 U.S.C. § 727(a)(2)(B), (a)(3), and (a)(4)(A).