In re Seymour GUTTMAN, Debtor.

Stuart A. Gold, Trustee, Plaintiff,

v.

Seymour Guttman, Defendant.

Bankruptcy No. 98–40052–R.
Adversary No. 98–4269.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

June 16, 1999.

Paul Randel, Southfield, Michigan, for plaintiff.

Charles Schneider, Livonia, Michigan, for defendants.

## OPINION DENYING THE DEBTOR'S DISCHARGE AND ALLOWING THE DEBTOR'S AMENDMENT TO HIS EXEMPTIONS

STEVEN W. RHODES, Bankruptcy Judge.

The Court conducted a consolidated trial on the trustee's complaint objecting to the discharge of the debtor and the trustee's objection to the debtor's amendment of his schedules to add a personal injury lawsuit and claim of exemption. Following trial, the Court found that the debtor had (1) transferred an asset with intent to hinder his creditors, (2) fraudulently omitted from his schedules a debt owing to him, (3) failed to turn over books and records, and (4) failed to satisfactorily explain the loss of assets. Therefore, the Court denied the debtor's discharge. However, because the debtor's proposed amendment to his exemptions was not in bad faith, the Court allowed it. This opinion supplements the Court's opinion given in court on April 2, 1999.

### I.

On January 5, 1998, Seymour Guttman filed a petition for relief under chapter 7. On January 22, 1998, Guttman filed an amended Schedule B to add a personal injury claim from an automobile accident which had occurred in 1996. The meeting of creditors was held February 12, 1998.

Prior to filing his petition, Guttman owned real property located in Troy, Michigan. He was also a shareholder and president of SJG, Inc., which operated a restaurant on the Troy property. Guttman's mother held approximately 93% of the stock of SJG and Guttman held the remainder. In 1993, Guttman sold the real property and SJG sold the business to Sung Jong Wee and Nan Jin Wee ("the Wees") on a land contract. The sale of the real property entitled Guttman to receive monthly payments of $672, with a balloon payment of $246,167.79 due in July of 1997. The sale of the business provided for monthly payments to SJG of $948.

In November of 1994, Guttman assigned the monthly payments due under the land contract to the law firm of Greenbaum and Greenbaum, for the purpose of paying the debts of Guttman and SJG. This assignment continued through July of 1997.

On July 14, 1997, the Wees made the balloon payment due on the real property. Guttman used the proceeds to pay off the underlying land contract from his purchase of the real property, and to pay both his creditors and creditors of SJG. Following the closing, the Wees remained indebted to SJG for the purchase of the business. In July of 1998, the Wees granted SJG a mortgage in their home. The Wees' business, New Horizon Investments, granted SJG a mortgage in the business to secure the remainder of the debt on the purchase of the business. The Wees sent their monthly payments of $948 to Guttman's mother, presumably because she was the majority shareholder of SJG. She then gave each of the monthly payments to Guttman for his living expenses. This monthly amount was included as income on Guttman's Schedule I.

## II.

■ An objection to discharge under § 727(a) requires proof by a preponderance of the evidence, and the trustee bears the burden of proof. *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393–94 (6th Cir.1994).

The trustee relies on the following provisions of § 727(a) in support of his complaint:

The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

. . . .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

. . . .

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11 U.S.C. §§ 727(a)(2)(A), (4)(A), (4)(D), (5).

■ The intent required under these sections must be actual, as distinguished from constructive, intent. *Bank of Pa. v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2nd Cir.1976). Because actual intent is difficult to prove directly, it may be established from circumstantial evidence or inferred from the debtor's conduct. *American Gen. Fin., Inc. v. Burnside (In re Burnside)*, 209 B.R. 867, 871 (Bankr. N.D.Ohio 1997). "Just one wrongful act may be sufficient to show actual intent. . . . However, a continuing pattern of wrongful behavior is a stronger indication of actual intent." *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 157 (Bankr.N.D.Ohio 1998).

## III.

■ The moving party must prove the following elements to succeed on a § 727(a)(2)(A) cause of action:

1) that the act complained of was done at a time subsequent to one year before the date of the filing of the petition,

2) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with the custody of the property under the Bankruptcy Code,

3) that the transfer was an act of the debtor or his duly authorized agent, [and]

4) that the act consisted of transferring, removing, destroying, or concealing any

of the debtor's property, or permitting these acts to be done.

*Burnside,* 209 B.R. at 871 (internal citation and quotation omitted).

█ It is undisputed that in July of 1997, within one year of filing his bankruptcy petition, Guttman used his property—part of the proceeds from the balloon payment—to pay the creditors of SJG, including Astro Foods, Big Beaver Ltd., Comerica Bank, Household Credit Services, and K. Lefkofsky & Co. These payments were "transfers" of his property. As noted above, to deny the discharge on this basis, the Court must find that these transfers were done with intent to hinder, delay or defraud.

Guttman testified that although he knew he was using his money to pay the debts of the corporation, he thought it was the right thing to do because those creditors had "stood by him" through the years. Although Guttman's expressed intent may sound noble, he had debts of his own at that time, including debts to his former wife and her attorney. Rather than use the proceeds from the balloon payment to pay his personal debts, Guttman opted to pay the debts of SJG.

The Court concludes that Guttman did this with the intent to hinder and delay his own creditors and that therefore the discharge should be denied. The evidence establishes that Guttman volunteered to pay the debts of SJG knowing that this would make him less able, or even unable, to pay his own debts. It further appears from the evidence that he did this to protect his mother's position in SJG as well as his own, because she gave him the SJG payments to live on. Accordingly, the Court concludes that the preponderance of the evidence establishes that Guttman intended to hinder and delay his own creditors through this device, and Guttman's discharge should be denied as a result.

### IV.

### A.

█ To prevail under § 727(a)(4)(A), the party objecting to the discharge must establish that the debtor made a false statement under oath, that the statement was made knowingly and with fraudulent intent, and that the statement was material to the bankruptcy case. *First Am. Bank of N.Y. v. Bodenstein (In re Bodenstein),* 168 B.R. 23, 32 (Bankr.E.D.N.Y.1994). The trustee claims that Guttman knowingly and fraudulently omitted two assets from the schedules—a personal injury claim, and the debt from SJG that resulted from Guttman's payments of its debts. The Court finds that the first omission was not fraudulent, but the second was.

### B.

█ Although Guttman did fail to initially schedule his personal injury claim, the Court finds that it was not done with the intent to defraud. Guttman did amend his schedules within three weeks of the filing of his petition to add the personal injury claim. Although it is not clear what prompted Guttman to amend his schedules at that time, it is significant that he did so prior to the § 341 meeting of creditors. Generally, courts have not denied the discharge when the debtor reports an omitted asset at or before the meeting of creditors. *Gillickson v. Brown (In re Brown),* 108 F.3d 1290, 1294 (10th Cir.1997); *Baker v. Mereshian (In re Mereshian),* 200 B.R. 342, 346 (9th Cir. BAP 1996); *Williamson Constr., Inc. v. Ross (In re Ross),* 217 B.R. 319, 324 (Bankr.M.D.Fla.1998).

Guttman did fail to properly serve the trustee with the statement of purpose to amend. However, the statement was in the file and available for the trustee's review. Further, the initial failure to schedule the asset was not material to the bankruptcy case. The settlement proceeds were turned over to the trustee and the trustee was not required to expend any time or resources investigating this asset. Accordingly, Guttman's failure to initially schedule his potential personal injury claim is not grounds for denying the discharge under § 727(a)(4)(A).

## C.

On the other hand, the Court concludes that Guttman's failure to disclose the debt owed to him by SJG is grounds to deny the discharge under § 727(a)(4)(A). In defending his failure to schedule this asset, Guttman has offered several explanations. First, he stated that he did not know whether he was owed anything, and if so, the amount. Further, he did not think it was collectible. However, the debtor is not permitted to decide to omit an asset because the debtor believes it lacks value. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir.1984); *Krudy v. Scott (In re Scott)*, 227 B.R. 834 (Bankr.S.D.Ind.1998); *Henning v. Mellor (In re Mellor)*, 226 B.R. 451 (D.Colo.1998); *Stanley v. Hoblitzell (In re Hoblitzell)*, 223 B.R. 211 (Bankr.E.D.Cal.1998); *Congress Talcott Corp v. Sicari (In re Sicari)*, 187 B.R. 861 (Bankr.S.D.N.Y.1994); *Lister v. Gonzalez (In re Gonzalez)*, 92 B.R. 960 (Bankr.S.D.Fla.1988). Also, there is no indication that Guttman ever tried to collect the debt from SJG. Indeed, the evidence suggests that Guttman intended to write the debt off as uncollectible for tax purposes. When asked if SJG owed him money, Guttman replied that he and his accountant were trying to figure out *for his tax return* what those numbers were and would know in the next couple weeks. (Tr. at 29.) Thus is appears that Guttman made a conscious decision to forego collection because he did not want, in effect, to collect the debt from his mother, the majority shareholder of SJG, in order to pay his creditors.

Guttman's contention that he thought any debt from SJG was uncollectible is simply not credible. He knew that SJG had assets; he testified that his mother had been forwarding to him the monthly $948 checks that SJG was receiving from the sale of the business. At trial, Guttman asserted that at the time he filed his petition, SJG had no money coming in and therefore Guttman did not think SJG had any assets. Guttman stated that it was not until July 1998, when the Wees restructured the debt, that SJG began receiving monthly payments again. However, Guttman indicated at his deposition that his mother was then forwarding to him the checks from SJG and had been for the previous one to two years. (Tr. at 34.) Further, Guttman listed this amount as income on his schedules when he filed his petition in January of 1998. If, at the time he filed his schedules, Guttman was receiving the $948 monthly checks of SJG, it is inconsistent with his representation that, during the same period, SJG did not have any assets.

As an further explanation of his failure to disclose this asset, Guttman testified at his deposition on March 8, 1998, that when the balloon payment was made in July of 1997, it was necessary for him to loan the proceeds to SJG money to pay off SJG's debts to get liens released, so that SJG could transfer clear title to the business to the purchasers. (Tr. of March 8, 1998 Dep. at 25.) However, this necessity is not apparent, as the SJG debts were primarily unsecured.

The Court concludes that Guttman's failure to schedule the debt owed from SJG was done knowingly and with fraudulent intent.

As a substantial potential asset, the SJG debt was material to the bankruptcy case. *Farouki v. Emirates Bank Int'l*, 14 F.3d 244, 251 (4th Cir.1994) (fact is material if it concerns the discovery of assets or business dealings, or the existence or disposition of property). "The bankruptcy system relies on a debtor to deal honestly with his creditors by making full, complete and honest disclosure in his statements and schedules." *Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 593 (Bankr.N.D.Tex.1991) (citing *Hudson v. Wylie*, 242 F.2d 435 (9th Cir.) *cert. denied*, 355 U.S. 828, 78 S.Ct. 39, 2 L.Ed.2d 41 (1957)). Accordingly, the Court finds that Guttman's failure to disclose the debt from SJG, Inc. warrants denial of the discharge under § 727(a)(4)(A).

### V.

▆ The focus of § 727(a)(4)(D) is on the debtor's duty to maintain and turn over recorded information which bears upon the debtor's financial condition and business affairs. *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y.1994).

▆ From the inception of this case, the trustee has attempted to obtain documentation concerning the disposition of the proceeds of the July 1997 land contract balloon payment. Guttman indicated at his deposition in March of 1998 that he would provide the trustee with an accounting. (Tr. at 65.) The trustee confirmed this request by letter dated March 16, 1998. (Trustee's Ex. 17.) The trustee again requested this information by letter dated March 30, 1998. (Trustee's Ex. 18.) And again, on September 29, 1998 and October 21, 1998, the trustee requested an accounting of the balloon payment. (Trustee's Ex. 19.)

In response to interrogatories regarding the balloon payment, Guttman stated that he was not directly involved in the details of the transaction and was not in possession of any of the requested documentation. He further indicated that pursuant to subpoenas issued to Harland Fine, Steve Hall, and Jerry Greenbaum, the trustee should have all the information requested. However, the accounting was not produced however until the eve of trial, and for that reason, it was not admitted into evidence.

▆ It was Guttman's duty to produce the requested documents. If he was not in possession of the documents, it was his duty to take action to obtain them and turn them over to the trustee, not to send the trustee in search of them. *See Dreyer*, 127 B.R. at 595 ("The trustee is not required to play detective and does not have the resources to do so."). *See also Ramsay v. Hall (In re Hall)*, 216 B.R. 17, 19 (Bankr.E.D.Ark.1997).

Guttman did not fulfill this duty. He testified that he thought the requested documents had been produced and was very upset to find out at his November 1998 deposition they had still not been produced. However, Guttman had taken no direct action to obtain those records. His professed outrage over the fact that they had not been produced is thus disingenuous. Further, at Guttman's November, 1998 deposition, his attorney again informed the trustee' attorney that the trustee would have to subpoena them from Steven Hall, another attorney for Guttman.

▆ A debtor's cooperation is a prerequisite to granting a discharge. *In re McDonald*, 25 B.R. 186, 189 (Bankr. N.D.Ohio 1982). The Court concludes that Guttman's failure to produce these documents after repeated requests by the trustee was knowing and fraudulent and thus constitutes grounds for denial of the discharge under § 727(a)(4)(D).

### VI.

▆ Section 727(a)(5) is broad enough to include any unsatisfactorily explained disappearance or shortage of assets. *See Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir.1984). The initial burden is on the objector to introduce some evidence of the disappearance of substantial assets or of unusual transactions. 6 *Collier on Bankruptcy*, ¶ 727.08 at 727–47 (15th ed.1998). The debtor must then satisfactorily explain what happened. *Id.* " 'To be satisfactory, 'an explanation' must convince the judge.' " *Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246, 249 (11th Cir.1995) (quoting *Chalik*, 748 F.2d at 619) (internal citation omitted). *See also Bodenstein*, 168 B.R. at 33 (debtor must convince court that assets have not been hidden or improperly shielded). The Court concludes that although Guttman did explain what happened to the assets, that explanation is not "satisfactory."

Guttman did explain the disposition of the proceeds from balloon payment. He stated that of the $238,000 payment, approximately $160,000 was used to pay his underlying obligation on the property. Guttman stated that the remaining amount went to pay his personal debts and the debts of SJG. A May 20, 1997, letter from Steven Hall to Guttman indicates four tax liens totaling $18,883.15. (See Debtor's Ex. T.) Further, the schedule for the closing attached to Greenbaum's ledger reflects debts in the amount of $34,023.29 to the creditors of Guttman and SJG. (See Debtor's Ex. G at 4.) Guttman testified that the proceeds of the closing were used to pay these debts and the Court finds that testimony credible.

Guttman did not provide documentation of the distribution of the proceeds until the eve of trial, and, as noted, for that reason, the trustee's objection to the admission of the settlement statement and the disbursement statement from the closing was sustained. Nevertheless, the Court concludes that even without these documents, for purposes of § 727(a)(5), Guttman has disclosed the disposition of these assets and it does not appear that these assets have been concealed in any sense. Indeed, the Court has relied upon Guttman's explanation in reaching its earlier conclusion that the discharge should be denied under § 727(a)(2)(A) for transferring assets with intent to hinder and delay creditors.

Nevertheless, the Court concludes that § 727(a)(5) requires more of the debtor than merely an accurate historical explanation of the loss of assets. The Court agrees that "the debtor probably must explain the losses or deficiencies in such manner as to convince the court of good faith and businesslike conduct." 6 *Collier on Bankruptcy*, ¶ 727.08 at 727–48 (15th ed.1998).

In this case, Guttman has not convinced the Court of his good faith and businesslike conduct in connection with the disposition of the balloon payment. Accordingly, Guttman did not satisfactorily explain the loss of those assets, and the Court will deny the discharge under § 727(a)(5).

## VII.

The trustee has also objected to Guttman's amendment to his schedules to add the potential personal injury claim and Guttman's claim of exemption of the proceeds of that claim. The trustee contends that Guttman was not acting in good faith.

Pursuant to Federal Rule of Bankruptcy Procedure 1009, a debtor may amend a voluntary petition as a matter of course any time before the case is closed. *See In re Lundy*, 216 B.R. 609 (Bankr. E.D.Mich.1998). "Rule 1009 adopts a permissive approach that freely allows amendments to lists or schedules without court permission at any time during the case." *In re Talmo*, 185 B.R. 637, 644 (Bankr. S.D.Fla.1995). However, the court may disallow amendments based on a finding of bad faith or prejudice to creditors. *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984). Bad faith may be found when a debtor attempts to conceal an asset. *In re Montanez*, 233 B.R. 791 (Bankr.E.D.Mich. 1999); *In re Stinson*, 221 B.R. 726, (Bankr.E.D.Mich.1998); *Lundy*, 216 B.R. at 610. A bad faith determination should be based on the totality of the circumstances. *Id.*

As previously discussed in Part IV. B. above, the Court finds that Guttman's failure to initially schedule the personal injury claim was not done with any fraudulent intent. For the same reasons, the Court finds that Guttman's amendment to add the personal injury claim was not in bad faith. Accordingly, the trustee's objection to Guttman's amendment and exemption of the personal injury claim is overruled.

## VIII.

In conclusion, Guttman's discharge is denied under §§ 727(a)(2)(A), (4)(A), (4)(D), and (5). The trustee's objection to

Guttman's amendment and exemption of his personal injury claim is overruled.