**In re Richard STODDARD, Debtor.**

**Ray Martin, Plaintiff,**

v.

**Richard Stoddard, Defendant.**

**No. 99–3136.**

United States Bankruptcy Court,
N.D. Ohio.

Feb. 11, 2000.

---

Joseph Thompson, Toledo, OH, for Plaintiff.

Stephen Priestap, Toledo, OH, for Defendant.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Defendant's Motion for Summary Judgment, Memorandum in Support, and Reply; and the Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment. This Court has now had the opportunity to review the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Defendant's Motion for Summary Judgment should be Denied; and that the matter should be scheduled for a further Pre–Trial.

### FACTS

The events giving rise to the instant adversary proceeding began more than thirty (30) years ago when Ray Martin (hereinafter referred to as the Plaintiff), and Richard Stoddard (hereinafter referred to as the Defendant) entered into a contractual relationship; the overall terms of the contract providing that the Defendant would construct a residence on and sell real property located in Hillsdale County, Michigan. However, according to the Plaintiff, the Defendant breached the terms of the Parties' contractual arrangement, and as a result, in 1970, an action by the Plaintiff was commenced against the Defendant in the Lucus County Court of Common Pleas. Notice of the Plaintiff's Complaint was subsequently provided to the Defendant; however, no answer was ever entered. Consequently, on May 7, 1971, a default judgment was taken against the Defendant, and thereafter, on June 29, 1971, at a hearing held to assess damages, a judgment for Seventeen Thousand Dollars ($17,000) (plus interest and costs) was rendered in the Plaintiff's favor.

After receiving his judgment, the Plaintiff attempted to locate the Defendant so as to commence execution proceedings against the Defendant's property. However, neither the Defendant nor his property could initially be found, and therefore, in an effort to overcome this difficulty, the Plaintiff, in November of 1972, conducted an examination of the Defendant's father pursuant to a citation issued by the Lucas County Court of Common Pleas. This examination, however, did not bear any tangible results. Consequently, in 1981, the Plaintiff, after making other unsuccessful attempts to locate the Defendant, including the hiring of an investigative agency, discontinued actively searching for the Defendant.

In 1998 it appears that by happenstance, the Plaintiff discovered that the Defendant's mother had passed away. As a consequence, the Plaintiff filed a motion, in the Lucus County Court of Common Pleas,

to revive his judgment against the Defendant; the Plaintiff's knowing that the Defendant, being an only child, potentially stood to inherit a significant estate. (The Defendant's father had died a few years earlier). Pursuant to the Plaintiff's motion, a conditional order of revivor was then entered by the Lucas County Court of Common Pleas on April 27, 1998, and later confirmed on July 1, 1998, when the Defendant failed to appear and show cause as to why the judgment should not be revived. At the time the judgment was revived, and as the result of accruing interest, the total outstanding balance on the Plaintiff's judgment stood at Fifty-four Thousand Nine Hundred Sixty-eight and 47/100 Dollars ($54,968.47).

Not long after the Plaintiff's Judgment was revived, the Defendant petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code, listing in his bankruptcy schedules the Plaintiff's Judgment as a general unsecured debt. In response thereto, the Plaintiff filed the instant adversary complaint, in accordance with Bankruptcy Rules 7001 and 7003, seeking a determination that this judgment arose from the Defendant's wrongful conduct, and thus should be found to be a nondischargeable debt pursuant to paragraphs (a)(2), (4) and/or (6) of Section 523 of the United States Bankruptcy Code. The Defendant, however, argues that the debt should be dischargeable on the basis that the Lucas County Court of Common Pleas improperly revived the judgment under Ohio law. In addition, the Defendant charges that given the passage of more than thirty (30) years since the events giving rise to the debt took place, it would now be inequitable to litigate the case. In support thereof, the Defendant points out that witnesses may be currently unavailable or may be unable to recall events accurately, and documentary evidence may have disappeared.

## DISCUSSION

■ Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

The defenses put forth by the Defendant in his response to the Plaintiff's complaint of Dischargeability is by way of a Motion for Summary Judgment. The standard for a summary judgment motion is set forth in Fed.R.Civ.P. 56, which is made applicable to this proceeding by Bankruptcy Rule 7056, and provides in pertinent part: "A movant will prevail on a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once more, in order to prevail, the movant must demonstrate all the elements of the cause of action. *R.E. Cruise, Inc. v. Bruggeman,* 508 F.2d 415, 416 (6th Cir.1975). However, upon the movant meeting this burden, the opposing party may not merely rest upon their pleading, but must instead set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.,* 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also In re Bell,* 181 B.R. 311 (Bankr.N.D.Ohio 1995).

■ Under Ohio law, if a judgment-creditor neither renews a certificate of judgment lien, nor obtains execution of the judgment within five years after the filing of the last certificate of judgment lien or execution, whichever occurred later, then the judgment becomes dormant. O.R.C. § 2329.07.[1] Thereafter, upon becoming

---

1. This section states, in pertinent part, that,

"[i]f neither execution on a judgment ren-

dormant, the judgment may not be enforced, and is thus without legal effect, unless the judgment is revived in accordance with O.R.C. § 2325.15.[2] *See* 62 OHIO JUR.3d *Judgments* § 153. However, under O.R.C. § 2325.18,[3] the holder of a judgment has only twenty-one (21) years, from the time the judgment becomes dormant, to bring an action to revive the judgment, after which time the judgment, although technically still in existence, becomes completely unenforceable. Accordingly, a judgment-creditor who permits the judgment to become dormant, and thereafter fails to revive the judgment within the statutory period, has no right to enforce the judgment, and thus the judgment-debtor's legal liability thereon is extinguished.

Pursuant to this statutory scheme, the Defendant asserts that the Plaintiff's judgment is without legal effect because the judgment was improperly revived by the Lucas County Court of Common Pleas. Specifically, the Defendant asserts that the Plaintiff's judgment was improperly revived in 1998 because the judgment, being entered in 1971, became dormant in 1976, and thus the deadline for reviving the Judgment passed in 1997. In opposition to this argument, the Plaintiff contends that the citation issued by the Lucas County Court of Common Pleas to conduct an examination of the Defendant's father in 1972 constituted an execution on the Plaintiff's judgment for purposes of O.R.C. § 2329.07. Accordingly, the Plaintiff maintains that under O.R.C. § 2329.07, this examination extended the time before the judgment became dormant, and thus by implication also extended the time in which the Plaintiff could revive his judgment under O.R.C. § 2325.18. The Court, however, after considering both of the Parties' arguments, finds that the pivotal issue in this case is not whether the judgment was properly revived, but is instead whether this Court has the authority, under the facts of this case, to effectively reverse a decision rendered by a state court; a question which, for the following reasons, this Court answers in the negative.

It is a fundamental principle of federal jurisprudence that any decision rendered by a state court of competent jurisdiction is generally speaking not to be disturbed. In order to implement this principle, various judicial doctrines have been developed that, when applicable, mandate that a court abstain from hearing a matter. For example, and specifically relevant to this case, are the related judicial doctrines of Res Judicata and Rooker–Feldman, both of which operate as a limit on the types of actions that a federal court

dered in a court of record or certified to the clerk of the court of common pleas in the county in which the judgment was rendered is issued, nor a certificate of judgment for obtaining a lien upon lands and tenements is issued and filed, as provided in sections 2329.02 and 2329.04 of the Revised Code, within five years from the date of the judgment or within five years from the date of the issuance of the last execution thereon or the issuance and filing of the last such certificate, whichever is later, then unless the judgment is in favor of the state, the judgment shall be dormant and shall not operate as a lien upon the estate of the judgment debtor."

2. O.R.C. § 2325.15 provides, "[w]hen a judgment, including judgments rendered by a judge of a county court or mayor, a transcript of which has been filed in the court of common pleas for execution, is dormant, or when

a finding for money in equitable proceedings remains unpaid in whole or in part, under the order of the court therein made, such judgment may be revived, or such finding made subject to execution as judgments at law are, in the manner prescribed for reviving actions before judgment, or by action in the court in which such judgment was rendered or finding made, or in which transcript of judgment was filed."

3. O.R.C. § 2325.18 provides that, "[a]n action to revive a judgment can only be brought within twenty-one years from the time it became dormant, unless the party entitled to bring such action, at the time the judgment became dormant, was within the age of minority, of unsound mind, or imprisoned, in which cases the action may be brought within fifteen years after such disability is removed."

may hear. The Court begins its analysis with the former.

▆▆ Res judicata, commonly referred to as claim preclusion, "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). The purpose of this doctrine has been described as a device to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980).

▆▆ To determine whether the res judicata doctrine lends preclusive effect to a particular state court decision, federal courts, pursuant to 28 U.S.C. § 1738, must look to the applicable state law to assess the preclusive effect a state court would attach to that decision. *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir.1987) *quoting Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 557 (6th Cir.1983), *aff'd*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Stated in another way, if an individual is precluded from litigating a suit in a state court by the traditional principles of res judicata, then that individual is similarly precluded from litigating that suit in federal court. Thus, in the case sub judice, as jurisdiction over the Plaintiff's state law claim was exercised by an Ohio state court, this Court, in applying the doctrine of res judicata, will look to the law of Ohio.

▆▆ In addressing the standard for applying the doctrine of res judicata under Ohio law, the Ohio Supreme Court has stated that:

It is well-settled in Ohio, under the doctrine of res judicata, that a final judgment or decree rendered upon the mer-

its, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them.

*Gilbraith v. Hixson*, 32 Ohio St.3d 127, 128, 512 N.E.2d 956, 958–59 (Ohio 1987) (internal quotations and citations omitted) *citing Norwood v. McDonald*, 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67 (Ohio 1943). Thus, from this language, it can be gathered that under Ohio law the following elements must be established for the doctrine of res judicata to apply:

(1) a final judgment, order or decree;[4]

(2) mutuality of parties;

(3) the court must have been one of competent jurisdiction;

(4) the final judgment or decree must have been rendered upon the merits, without fraud, or collusion.

*See Corradi v. Bear Creak Investments*, 1998 WL 241927 *4 (Ohio App. 8th Dist. May 14th 1998) *Karmasu v. Tate* (Sept. 15, 1994), 1994 WL 521235 *2 Scioto App. No. 94 CA 2217. Thereafter, upon these requirements being met, the doctrine of res judicata will serve to preclude the litigation of all claims or defenses which could have been raised in the original action. *Joe Horisk's Salvage Pool v. Strongsville*, 91 Ohio App.3d 121, 126, 631 N.E.2d 1097, 1101 (Ohio 1993). As the Ohio Supreme Court has repeatedly held, the doctrine of res judicata "applies not only to what was determined but also to every question which might properly have been litigated." *Stromberg v. Bd. of Educ.*, 64 Ohio St.2d 98, 100, 413 N.E.2d 1184 (Ohio 1980); *see also Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229 (Ohio 1995) (a valid final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of

---

**4.** Ohio R. Civ. P. 54(a) states, in relevant part, that a judgment "includes a decree and any order from which an appeal lies as provided in section 2505.02 of the Revised Code."

the transaction or occurrence that was the subject matter of the previous action); *State ex rel. Ohio Water Service Co. v. Mahoning Valley Sanitary Dist.*, 169 Ohio St. 31, 34, 157 N.E.C 116, 118 (Ohio 1959) (res judicata is "dispositive not only of issues which were actually litigated but also of those which could have been litigated"); *Charles A. Burton, Inc. v. Durkee*, 162 Ohio St. 433, 438, 123 N.E.2d 432 (Ohio 1954) ("an action is conclusive in the second action or second trial of an action as to every issue which was or might have been presented and determined in the former instance").

In applying the above requirements to the case sub judice, it only appears that the applicability of the last element presents any sort of issue; thus, the Court's analysis will be confined to addressing this element.[5]

 As stated, the last element of Ohio's res judicata test requires that for the prior judgment or decision to be given preclusive effect, such judgment or decision must have been rendered upon the merits. As a result, in the present case it would initially appear that this element of Ohio's res judicata test has not been met as the Lucas County Court of Common Pleas in essence revived the Plaintiff's judgment by default on account of the Defendant's failure to defend in the revivor action. However, Ohio case law has clearly held that judgments entered by default are to be treated as if they had

been fully adjudicated on the merits. *Petrie v. W. Reserve Pole Bldg. Co., Inc.*, 1983 WL 6086 *2 (Ohio App. 11th Dist. August 12, 1983); *Forum Ins. Co. v. McMacken*, 1995 WL 539613 *2 (Ohio App. 7th Dist. Aug. 31, 1995); *Suiter v. Walker*, 1992 WL 174702 *2 (Ohio App. 4th Dist. July 21, 1992). The policy basis for this is simple: the need to have finality in judicial proceedings and simple fairness dictate that a person who chooses not to defend an action should not later be given a second chance to litigate the merits of that cause of action. Once more, this principle of applying res judicata to decisions rendered by default is applicable regardless of whether the underlying decision was correct. *Nozik v. Sanson*, 1996 WL 613643 *4 (Ohio App. 8th Dist. Oct. 24, 1996); *Wisconsin v. Weller (In re Weller)*, 189 B.R. 467, 471 (Bankr.E.D.Wis.1995); *see also Rollins v. Dwyer*, 666 F.2d 141. (5th Cir.1982) (under principles of res judicata principles, court of appeals does not review state court judgments for error). As the Supreme Court stated in *Jeter v. Hewitt*, "res judicata [may] render[ ] white that which is black, and straight that which is crooked." 63 U.S. (22 How.) 352, 364, 16 L.Ed. 345 (1859). Therefore, based upon the application of res judicata, the Defendant's failure to contest the timeliness of the Plaintiff's revivor action does not now afford him the opportunity to litigate that issue in this Court, even if that decision were wrongly decided.[6] In addition, for

---

**5.** It should be pointed out that it is conceivable that the first element of Ohio's collateral estoppel test could also present an issue as the Ohio Supreme Court in *Squire v. Guardian Trust Co.*, held that in the situation where the personal representative of a deceased defendant is substituted as the party in interest by an order of revivor, such an order, being interlocutory in nature, is not a final judgment. 147 Ohio St. 1, 3–4, 68 N.E.2d 312, 313 (Ohio 1946). However, the Ohio Revised Code makes a distinction between reviving a judgment upon the death of a party, and the reviving of a judgment by reason of dormancy. Namely, O.R.C. § 2325.19 governs the former, and O.R.C. § 2325.15, governs the latter. Thus, given these statutory distinc-

tions, this Court declines to extend the holding in *Squire* beyond the situation in which an order of revivor is secured against the personal representative of a deceased defendant. Accordingly, in this case, the Court finds that a final order, for purposes of res judicata, was entered when the Lucas County Court of Common Pleas ordered, on July 1, 1998, that the Plaintiff's judgment against the Defendant be revived. *See also* O.R.C. § 2505.02 (defining a final appealable order).

**6.** One final note, the Court is cognizant of the fact that the principles of res judicata do not apply to dischargeability proceedings. *See e.g., American Express Travel Related Servs. Co., Inc. v. Hernandez (In re Hernandez)*, 195

the reasons set forth below, even if the doctrine of res judicata were not applicable in this case, the Defendant is still prohibited from collaterally attacking the revivor of the Plaintiff's judgment under what is known as the Rooker–Feldman doctrine.

The Rooker–Feldman doctrine, which takes its name from two Supreme Court cases,[7] is, in its simplest terms, a prohibition against a lower federal court entertaining a collateral attack on a state court decision. The doctrine itself, which is partially codified in 28 U.S.C. § 1257,[8] holds that only the Supreme Court of the United States has jurisdiction to hear appeals of decisions rendered by a state court. As a consequence, a party allegedly aggrieved by an improper state court decision is required to appeal that decision through the state court system, and then if need be, directly to the Supreme Court of the United States.[9] *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.1995); *see also Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir.1995) (the Rooker–Feldman Doctrine applies to claims originally based on state law).

The doctrine, in both its form and its effect, is closely related to the doctrine of res judicata. *United States v. Owens*, 54 F.3d 271, 274 (6th Cir.1995) (the Rooker–Feldman doctrine is a combination of the abstention and res judicata doctrines). For example, like the doctrine of res judicata, the Rooker–Feldman doctrine applies even when a state court judgment may be in error. *Singleton v. Fifth Third Bank of Western Ohio (In re Singleton)*, 230 B.R. 533, 538 (6th Cir. BAP 1999). However, unlike the doctrine of res judicata, the Rooker–Feldman doctrine is jurisdictional in nature, and as such its application cannot be waived. *Blanton v. United States*, 94 F.3d 227, 233–34 (6th Cir.1996); *In re Singleton*, 230 B.R. at 537.

In determining whether the Rooker–Feldman doctrine is applicable, it must be ascertained whether the party bringing the claim is seeking what in substance would be the appellate review of a state court decision. *Johnson v. Odom*, 901 F.Supp. 220, 223 (W.D.La.1995). This

B.R. 824, 830 (Bankr.D.P.R.1996). However, in this case, the Court, by applying the doctrine of res judicata, is in no way passing upon the issue as to the dischargeability of the Plaintiff's judgment. Instead, applying the doctrine of res judicata to the decision to revive the Plaintiff's judgment merely establishes the legitimacy of the Plaintiff's right to assert a claim against the Defendant's bankruptcy estate. *See, e.g., In re Wizard Software*, 185 B.R. 512, 517 (Bankr.E.D.Va.1995) (holding that res judicata applies to bankruptcy matters that are outside the scope of dischargeability.)

7. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

8. This section provides, in pertinent part, that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a...statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the grounds of its being repugnant to the

Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution...or statutes of, or any commission held or authority exercised under, the United States."

9. In most cases involving the Rooker–Feldman doctrine, a federal court defendant is seeking to invoke the doctrine against a plaintiff who previously lost his case in state court. However, given the basis behind the Rooker–Feldman doctrine, this Court can see no reason why the plaintiff of a dischargeability action brought under 11 U.S.C. § 523(a) should not be able to employ the doctrine against a defendant, who through a summary judgment motion, seeks in substance to reverse a state court decision previously rendered in the plaintiff's favor. *See Matter of Besing*, 981 F.2d 1488, 1496 (5th Cir.1993) ("[t]he Bankruptcy Code was not intended to give litigants a second chance to challenge a state court judgment nor did it intend for the Bankruptcy Court to serve as an appellate court for state court proceedings") (internal quotations and citations omitted).

statement, however, should not be taken to mean that an action or defense brought in a federal court, which merely has the inadvertent effect of reversing a state court decision, automatically calls for the application of the Rooker–Feldman doctrine. As the Bankruptcy Appellate Panel for the Sixth Circuit Court of Appeals in *In re Singleton* pointed out, the Rooker–Feldman doctrine asks:

> is the federal [litigant] seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*In re Singleton,* 230 B.R. at 537 *citing GASH Assocs. v. Village of Rosemont, Ill.,* 995 F.2d 726, 728 (7th Cir.1993). To make this determination, the Sixth Circuit Court of Appeals held that a court is to ask whether the federal court proceedings are "inextricably intertwined" with the state court judgment. *Catz v. Chalker,* 142 F.3d 279, 293 (6th Cir.1998). In making this determination, the Sixth Circuit Court of Appeals stated that a federal and state claim are inextricably intertwined if:

> the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court [decision].

*Id.*

 In applying this standard to the instant case, it is readily apparent that in contravention to the Rooker–Feldman doctrine, a favorable ruling on the Defendant's Motion for Summary Judgment would have to be predicated upon this Court's conviction that the Lucas County Court of Common Pleas wrongly decided the Plaintiff's revivor action. Stated in another way, there is no way this Court could rule for the Defendant without making a finding that the Lucas County Court of Common Pleas revived the Plaintiff's judgment outside the twenty-one (21) year time period imposed by O.R.C. § 2325.18. In fact, the Defendant in his Memorandum in support of Summary Judgment, indirectly acknowledges this holding by specifically asking this Court to "revisit" the issue of whether the Lucas County Court of Common Pleas properly revived the Plaintiff's judgment. Before concluding with this Court's analysis of the Rooker–Feldman doctrine, however, it should be pointed out that even if the doctrine is initially found to be applicable, certain exceptions to the doctrine's applicability have been recognized. Specifically, in *In re Singleton* it was pointed out that the Rooker–Feldman doctrine does not apply if any of the following circumstances are present: (1) the state court judgment was procured through fraud, deception, accident or mistake; (2) the party against whom the Rooker–Feldman doctrine is asserted was not a party in the state court proceeding; (3) there was no reasonable opportunity to raise the claim at issue; (4) the state court lacked subject matter jurisdiction; or (5) a federal statute specifically authorizes federal review of a state court decision. 230 B.R. at 538. A review of the record of this case, however, does not in the least suggest to the Court that any of these exceptions are applicable. Thus, based upon the applicability of the Rooker–Feldman doctrine vis-a-vis the issue of whether the Plaintiff's judgment was properly revived, this Court declines, on jurisdictional grounds, to revisit the decision rendered by the Lucas County Court of Common Pleas.

The Defendant, however, argues that even if the Plaintiff's claim is valid, this Court must, as a matter of law, decline to hear the Plaintiff's dischargeability complaint based upon the interaction between

the following two principles: First, the Defendant contends that as the Plaintiff's state law judgment was rendered by default, this Court is required to make an independent determination as to whether the Defendant's conduct falls within one of the exceptions to discharge asserted by the Plaintiff. Second, as the events giving rise to the debt occurred more than thirty (30) years ago, it would now be unfair to conduct a trial to determine if the Defendant's conduct conforms to the averments contained in the Plaintiff's complaint. In support thereof, the Defendant relies upon the legal doctrine of equitable estoppel, and basic principles of equity.

Upon considering these arguments, however, the Court, although agreeing with the Defendant that this Court must make an independent determination as to the dischargeability of the Plaintiff's state court judgment, does not find, based upon equitable principles, that the mere passage of thirty (30) years entitles the Defendant to a judgment as a matter of law. To begin with, if the averments contained in the Plaintiff's complaint are correct, basic principle of equity do not permit the mere passage of time to be a method by which a party can escape a debt that was wrongfully incurred. The reason for this is that a bankruptcy discharge was only intended for those debts which were honestly incurred, and the mere passage of time does not change the basic nature of the debt. *Cohen v. De La Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 1216, 140 L.Ed.2d 341 (1998). This is not to say that issues such as the unavailability of witnesses, the disappearance of documentary evidence, and the ability of witnesses to accurately recall events that took place more than thirty (30) years ago would not be significant factors in determining if the Plaintiff has met his burden of proof under the appropriate nondischargeability provisions. Nonetheless, such considerations, standing alone, do not entitle the Defendant to a judgment as a matter of law, but instead merely go to the weight of the evidence. In addition, the Defendant's assertion that the doctrine of equitable estoppel should preclude the litigation of the Plaintiff's nondischargeability complaint is not appropriate under the facts of this case, as the doctrine of equitable estoppel only applies against a party who has taken active steps to prevent an opponent from acting in time to protect a claim. *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1100 (6th Cir.1996), *cert. denied*, 519 U.S. 963, 117 S.Ct. 385, 136 L.Ed.2d 302 (1996). In this case, of course, just the opposite seems to be true considering that the Defendant apparently took affirmative steps to keep his whereabouts hidden.

Consequently, for the foregoing reasons, this Court must deny the Defendant's Motion for Summary Judgment. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment submitted by the Defendant, Richard Stoddard, be, and is hereby, DENIED.

It is **FURTHER ORDERED** that this matter be, and is hereby, set for a further Pre–Trial on Thursday, March 2, 2000, at 1:00 P.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.