**In re William F. DANIELS and Mary J. Daniels, Debtors.**

No. 00–32170.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Dec. 6, 2001.

[redacted]

[redacted]

[redacted]

Jon Allen Broadworth, Roseville, MI, for Debtors.

Collene K. Corcoran, Bingham, Farms, MI, Chapter 7 Trustee.

***CORRECTED OPINION SUSTAINING THE TRUSTEE'S OBJECTION TO THE DEBTORS' AMENDED CLAIM OF EXEMPTIONS***

ARTHUR J. SPECTOR, Chief Judge.

This matter is before the Court on the Trustee's objection to the Debtors' amended claim of exemptions of the proceeds of a personal injury lawsuit. The Court will sustain the Trustee's objection because (1) the Court has previously entered a final order determining that the Debtors are not entitled to exempt their interest in the personal injury lawsuit from the bankruptcy estate and such decision bars them from relitigating this issue; and (2) the doctrine of laches precludes the Debtors from asserting their amended claim of exemptions.

## I. *Facts*

The Debtors filed a voluntary petition for relief under Chapter 7 and all schedules and statements on October 26, 2000. On Schedule B, the Debtors listed a personal injury lawsuit captioned "*William Daniel v. Kroger Co. of MI, Great Lakes Automatic Door*" pending in Genesee County Circuit Court (Case No. 00–067490–NO) as personal property, and listed its value as "UNKNOWN." On Schedule C, the Debtors claimed the lawsuit exempt under 11 U.S.C. §§ 522(d)(11)(D) and 522(d)(5),[1] respectively listing the value of each statutory exemption and of the lawsuit as "UNKNOWN."

On December 26, 2000, the Trustee timely filed an objection to the Debtors' claim of exemptions in the personal injury lawsuit based on the Debtors' failure to list on Schedule C specific dollar amounts for each statutory exemption claimed for the lawsuit. The Trustee asserted that "[w]ithout a dollar amount stated on Schedule C, it is impossible for the Trustee to determine whether the lawsuit should be pursued as an asset of the estate, or abandoned by the estate." Trustee's Objection to Exemptions at ¶ 6. The Trustee stated that "unless the [D]ebtors amend

1. Unless otherwise specified, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

Schedule C to provide for a dollar amount for each exemption, the Trustee is requesting that the exemptions taken for the lawsuit be denied in their entirety." *Id.* at ¶ 7. The Debtors did not file a response.

On January 29, 2001, the Trustee filed a certification of non-response to her objection. On January 31, 2001, the Court entered an order sustaining the Trustee's objection based on the Trustee's certification. The Debtors did not seek reconsideration or relief from the order denying their claimed exemptions and did not appeal the order.

On February 14, 2001, the Court granted the Trustee's application for approval of the employment of special counsel to pursue the state court personal injury lawsuit. On July 30, 2001, the Trustee filed a motion seeking the Court's approval of a settlement of the personal injury claim for $21,500. In support of her motion, the Trustee asserted, in part, that "[p]ursuant to the Order Sustaining Trustee's Objection to Exemptions, dated January 31, 2001, the debtor will receive no funds from this settlement but all funds will be paid to his bankruptcy estate for the benefit of his creditors." Trustee's Mot. For Compromise of Claim at ¶ 8. For this reason, the Trustee concluded that "it is uncertain if the debtor will testify on behalf of the estate." *Id.*

The Debtors objected to the Trustee's motion for approval of the compromise. In their objection, the Debtors denied that they would receive no funds from the settlement of the lawsuit for the reason that they were "unable to place a value on the asset and thus . . . unable to determine the exemption." Debtor[s'] Response to Trustee's Mot. For Compromise of Claim at ¶ 8.

On August 20, 2001, the Debtors filed a statement of purpose "to amend [S]chedules B & C to add value and exempt amount to personal injury lawsuit." On their amended Schedule B, the Debtors valued the personal injury lawsuit at $20,000. On their amended Schedule C, the Debtors claimed exemptions for the lawsuit under §§ 522(d)(11)(D) and 522(d)(5), valuing each claimed exemption respectively at $16,150 and $3,850.

On September 4, 2001, the Trustee filed an objection to the Debtors' amended claim of exemptions. In essence, the Trustee asserted that allowing the amended exemptions, where the Debtors had failed to take any action to cure their defective schedules until after the Trustee and special counsel had negotiated a settlement of the lawsuit, would be "prejudicial to creditors and the estate." Trustee's Objection to Debtors' [Amended] Exemptions, p. 1. The Trustee explained that she had relied upon the order denying the Debtors' exemptions in deciding whether there would be sufficient "equity for the creditors upon liquidation of the asset" to justify pursuing the state court litigation for the benefit of the estate, and, together with the special counsel, had expended considerable time and expense in pursuing the litigation to benefit creditors. *Id.* at ¶ 9.

On September 17, 2001, the Debtors filed an answer to the Trustee's objection to their amended claim of exemptions. In essence, the Debtors argued that they were justified in failing to respond to the Trustee's initial objection to their claimed exemptions and in failing to take other legal action prior to the Trustee and special counsel negotiating a settlement, because they "could not have reasonably ascertained a value to claim as exempt, prior to the Trustee having received information that the case could be settled for a specific value." [Debtors'] Answer to Trustee's Objection to Debtors' [Amended] Exemptions, ¶ 5.

On October 24, 2001, the Court entered an order approving the Trustee's compromise of the personal injury claim for $21,500. The Court must now decide whether, under the circumstances, it is appropriate to allow the Debtors' amended claim of exemptions in the proceeds of the personal injury lawsuit.

## II. *Discussion*

### A. *The Exemption Scheme Under the Bankruptcy Code*

Section 522(*l*) of the Bankruptcy Code and Fed. R. Bankr.P. 4003(a) require debtors to schedule all property claimed as exempt pursuant to § 522(b). Under Fed. R. Bankr.P. 4003(b), any party in interest may object to a debtor's claimed exemptions "only within 30 days after the meeting of creditors held under § 341(a) is concluded." "Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l*). However, if a party in interest objects, the bankruptcy court will determine whether to allow the exemption as a contested matter governed by Fed. R. Bankr.P. 9014. Pursuant to L.B.R. 9014–1(a) (E.D.M.), "an objection to a claim of exemption [is] deemed to be a motion." Pursuant to L.B.R. 9014–(c), if the debtor does not timely serve a response to a movant's objection to his claimed exemptions, the Court may enter an order denying the exemptions without a hearing provided the movant files a certification of no response, together with a proposed order granting his motion and "a copy of the original proof of service of the motion," no earlier than the time periods specified by the local rule. "An order denying a claim of exemption is a final, appealable order." 9 *Collier on Bankruptcy*, ¶ 4003.03[2], at 4003–12 (15th ed. rev.2001).

Fed. R. Bankr.P. 1009(a), provides debtors with the "general right to amend" their schedules, including their schedules of exemptions, "as a matter of course at any time before the case is closed." However, as with an originally filed schedule of exemptions, upon the timely filing of an objection to the amended claim of exemptions by a party in interest ("within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later"), a bankruptcy court will determine whether to allow the exemptions. Fed. R. Bankr.P. 4003(b)-(c). "The courts have, for the most part, not made a distinction between a denial of the right to amend exemptions and a denial of exemptions because the former usually results in the latter." *In re Sumerell*, 194 B.R. 818, 832 n. 20 (Bankr.E.D.Tenn.1996). However there is a distinction that was explained by the court in *In re Welborne*, 63 B.R. 23, 24–25 (Bankr.D.Neb.1986):

> Under Rule 1009 the debtor may amend the schedules, including [one] containing the listed exemptions, at any time as a matter of course until the case is closed. **The fact that the debtor has the right to amend the schedules as a matter of right does not necessarily mean that any additional claim of exemptions ultimately will be allowed.** It is clear that a trustee or any party in interest have just as much right to object to the additional claim of exemptions as they have to object to the original claim of exemptions.

*Id.* (emphasis added). "In any hearing [on an objection to a debtor's original or amended claim of exemptions] the objecting party has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr.P. 4003(c); *see also In re Lusiak*, 247 B.R. 699, 702 (Bankr.N.D.Ohio 2000) (explaining that the party objecting to a debtor's claimed exemption under Rule 4003(c) has the burden of proving the objection is not proper by a preponderance

of the evidence)[2] (citing *In re Sims*, 241 B.R. 467, 468 (Bankr.N.D.Okla.1999)).

## B. Grounds for Denying An Amended Claim of Exemptions

Despite the general policy of liberally allowing amendments to schedules under Rule 1009(a), it is well-settled that there are valid grounds for bankruptcy courts to deny a debtor's amended claim of exemptions.

### 1. Finality

■ Bankruptcy courts should disallow an amended claim of exemption where the purpose and/or the effect of the amendment is to allow the debtor to relitigate an exemption claim which has already been determined by the court. *In re Grantham*, 256 B.R. 262, 263–64 (Bankr. M.D.Tenn.1999); 9 *Collier on Bankruptcy*, ¶ 1009.02[1], at 1009–4 ("The right to amend the various statements and schedules does not mean, however, that the debtor has an unfettered right to alter previously settled rights of affected entities."). In *Grantham*, the Chapter 7 debtors claimed a breast implant lawsuit exempt under two statutory provisions on their originally filed Schedule C, indicating that the value of lawsuit was "unknown." 256 B.R. at 263. As here, the trustee objected to the debtors' claimed exemption on the basis that the debtors had failed to list a value for the lawsuit and had failed to value each statutory exemption claimed. *Id.* As here, although required by local rule to respond in writing or forfeit their position, the debtors did not file a response to the trustee's objection. A hearing on the trustee's objection was held on September 28, 1999, at which neither the debtors' attorney nor the debtors appeared. As a result, on October 6, 1999, the court signed an order sustaining the trustee's objection. *Id.*

On September 30, 1999, only two days following the hearing on the trustee's objection, the debtors filed an amended Schedule C, claiming that $7,500 of the proceeds of the lawsuit was exempt. The trustee objected to the debtors' amended claim of exemptions as untimely. She argued that the debtors' failure to submit a response to her objection and their failure

2. Some courts have held that to prevail on an objection to a debtor's claimed exemption, the objecting party must establish the exemptions are improperly claimed "by clear and convincing evidence." *See, e.g., In re St. Angelo*, 189 B.R. 24, 26 (Bankr.D.R.I.1995) ("Bad faith and/or prejudice must be shown by clear and convincing evidence.") (relying on *In re Brown*, 56 B.R. 954, 958 (Bankr.E.D.Mich. 1986) (Graves, J.)); *In re Yonikus*, 996 F.2d 866, 872 (7th Cir.1993) (same) (similarly relying on *Brown*, 56 B.R. at 958). The Court disagrees with these decisions, agreeing instead with *Lusiak* that the preponderance of the evidence standard rather than "clear and convincing" standard governs objections to exemptions. Reliance on *Brown* is misplaced given the United States Supreme Court's holding in *Grogan v. Garner*, 498 U.S. 279, 286–87, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), that the appropriate burden of proof for § 523 dischargeability actions is preponderance of the evidence. The Court instruct-

ed that there is a presumption that the preponderance of the evidence standard applies absent a clear directive from Congress that "it intended to require a special, heightened standard of proof," or the implication of "particularly important individual interests and rights." *Id. See also Borg–Warner Acceptance Corp. v. Watkins (In re Watkins)*, 90 B.R. 848, 856–57 (Bankr.E.D.Mich.1988) (same). This conclusion is further reinforced by the Supreme Court's statement in *Grogan* that it was "unpersuaded by the argument that the clear-and-convincing standard is required to effectuate the 'fresh start' policy of the Bankruptcy Code." *Grogan*, 498 U.S. at 286, 111 S.Ct. 654. *See also Watkins*, 90 B.R. at 856–57. In *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP 2000), the court similarly stated, in dicta, that *Grogan* has rendered doubtful the continued vitality of those cases requiring a party objecting to an exemption to prove exemptions are improper by clear and convincing evidence.

to appear at the hearing resulted in the entry of the order sustaining her objection. This, she argued, should preclude the debtors from again claiming the previously disallowed exemption by amending it. *Id.*

The *Grantham* court agreed with the trustee, relying, in part, on a local bankruptcy court rule governing contested matters which provided:

> Unless provided otherwise in a notice or order of by these local rules, in all contested matters, any party in opposition to the relief required shall file and serve a written response denominated as an "answer" or "objection" on or before the earlier of ten (10) days after service of the motion (or other paper commencing the contested matter) or five (5) days before any hearing of the contested matter. The failure to file and serve a timely written response shall be deemed a state of no opposition to the relief requested.

*Id.* (citing Local R. Bankr.P. 5.12 (M.D.Tenn.)). This rule, as does our L.B.R. 9014–1, required that the debtor's failure to timely file a response to a trustee's objection to exemptions be treated as if the debtor did not oppose disallowance of the exemption. Pursuant to this rule, the *Grantham* court had entered an order disallowing the debtors' claim of exemption. Having already decided the exemption issue with regard to the lawsuit, the court refused to allow the debtors to take advantage of their general right to amend their schedules under Rule 1009(a) to gain a second bite of the apple. In this regard, the court explained: "The debtors' failure to file a written response or even appear at the scheduled hearing on the exemption issue precludes relitigation of this issue by amendment to their Schedule C." *Id.*

As noted, the facts here are nearly identical to those in *Grantham.* The Debtors here, like the debtors in *Grantham,* failed to respond to the Trustee's objections to their claimed exemption in the proceeds of a lawsuit as required by local rule, and as a result, the Court entered an order determining that their exemption claim was not allowed. Additionally, the Debtors, like the debtors in *Grantham,* now seek to have the Court allow the very exemption that it previously denied by simply modifying the amount of the exemption. The Court agrees with *Grantham* that debtors may not use the amendment procedure under Rule 1009(a) to relitigate an exemption claim already determined by the Court, thereby circumventing their duty under a local rule to answer objections to their claimed exemption at the time those objections are raised in the manner provided by the local rule.

■ *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) is instructive. In *Taylor,* the trustee failed to object to a debtor's claim of exemption in the proceeds of an employment discrimination lawsuit within the time prescribed by Rule 4003(b). As a result, the exemption was allowed by operation of § 522(*l*). All parties agreed that "the debtor had no colorable basis for claiming the exemption" and thus the trustee "apparently could have made a valid objection under § 522(*l*) and Rule 4003 if he had acted promptly." *Id.* at 639, 642–44, 112 S.Ct. 1644. Nevertheless, the Court held that the trustee could not object to the claimed objection after the deadline, explaining that "[d]eadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Id.* at 644, 112 S.Ct. 1644. The deadline in Rule 4003(b) for parties in interest to object to a debtor's claimed exemptions, and the deadline in L.B.R. 9014–1 for the debtor to respond to objections, serve the twin public policy goals of deadlines in general articulated in *Taylor*

of (1) "prompt[ing] parties to act," and (2) "produc[ing] finality." *See Taylor,* 503 U.S. at 644, 112 S.Ct. 1644. They promote the expeditious resolution of exemption claims and the efficient administration of the bankruptcy estate. The inverse implication of *Taylor's* holding that the trustee is precluded from asserting a valid objection to a debtor's claimed objection, where he has failed to object within the time limits established by the procedural rules, is that the debtor may not assert a valid claim of exemption, where he has failed to appropriately defend that claim when attacked by the trustee's objection. It follows from the fact that a debtor's claim of exemption becomes final once the Rule 4003(b) deadline has passed without objection, that an order denying an exemption based on the debtor's failure to defend the exemption within the time allotted by L.B.R. 9014–1 is a final adjudication of the debtor's right to the exemption. *Taylor's* strict enforcement of the deadline set by Rule 4003(b) in spite of its recognition that deadlines may lead to unwelcome results, reflects the importance the legal system places on finality. *See Taylor,* 503 U.S. at 644, 112 S.Ct. 1644.

 The value the legal system places on finality is embodied in the doctrine of res judicata. In *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 918 F.2d 658, 660–61 (6th Cir.1990), the court explained the doctrine of res judicata:

Res judicata, or claim preclusion as it is more helpfully termed, is the doctrine, simply stated, by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or cause of action or raising a new defense to defeat a prior judgment. It precludes not only relitigating a claim or cause of action previously adjudicated, it also precludes litigating a claim or defense that should

have been raised, but was not, in a claim or cause of action previously adjudicated. This last variation was formerly known as the rule against splitting a cause of action . . . .

The doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

*Id.* (citing Jack H. Friedenthal, Mary Kay Kane, & Arthur R. Miller, Civil Procedure at 607–09 (West 1985)) (quotations and citations omitted).

Res judicata bars a claim when (1) the same party or parties in privity with them were present in the prior litigation; (2) a court of competent jurisdiction has entered a valid, final judgment on the merits; and (3) the present action concerns the same subject matter or cause of action as the prior suit.

*Anchor Motor Freight, Inc. v. Local 377, International Brotherhood of Teamsters,* 700 F.2d 1067, 1069–70 (6th Cir.1983) (relying on *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 579, 94 S.Ct. 806, 39 L.Ed.2d 9, and *Harrison v. Bloomfield Building Industries, Inc.,* 435 F.2d 1192, 1195 (6th Cir.1970)); *see also Vogel v. Kalita (In re Kalita),* 202 B.R. 889, 893–94 (Bankr.W.D.Mich.1996) (explaining that "res judicata bars a second action on the same claim or cause of action including all matters that were raised or could have been raised in the first action" and that "res judicata forecloses all that which might have been litigated previously").

 The Court's order disallowing the Debtors' amended claim of exemptions in the proceeds of the personal injury lawsuit might be construed as analogous to a de-

fault judgment because it was entered without a hearing due to the Debtors' failure to answer the Trustee's objection. However, for purposes of res judicata, a default judgment is considered a judgment on the merits. *Riehle v. Margolies,* 279 U.S. 218, 225, 49 S.Ct. 310, 73 L.Ed. 669 (1929) ("A judgment of a court having jurisdiction of the parties and of the subject-matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default.") (relying on *Last Chance Mining Co. v. Tyler Mining Co.,* 157 U.S. 683, 691, 15 S.Ct. 733, 39 L.Ed. 859 (1895) (explaining that "a judgment by default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one rendered after answer and contest")); *Bloomer v. Bustraan (In re Bloomer),* 32 B.R. 25, 26 (Bankr.W.D.Mich.1983) (holding that a default judgment "does not preclude the applicability of res judicata"). The court in *Martin v. Stoddard (In re Stoddard),* 248 B.R. 111, 119 (Bankr.N.D.Ohio 2000), explained the policy grounds for treating default judgments "as if they had been fully adjudicated on the merits" as follows:

> [T]he need to have finality in judicial proceedings and simple fairness dictate that a person who chooses not to defend an action should not later be given a second chance to litigate the merits of that cause of action.... [T]his principle of applying res judicata to decisions rendered by default is applicable regardless of whether the underlying decision was correct.

*Id.* The order here constitutes a valid final judgment on the merits because it "finally disposed of [a] discrete dispute[ ] within the larger [bankruptcy] case," more specifically the allowability of the Debtors' claimed exemptions. *Newton v. Herskowitz,* 106 B.R. 492, 496–97 (Bankr.E.D.Tenn. 1989) (distinguishing a bankruptcy case, where a multitude of orders resolving the many discrete disputes within the bankruptcy case are considered final orders from which appeals lie, from civil cases, which are "viewed as a 'single judicial unit,' from which only one appeal would lie"). This judgment determined the rights of the same parties now contesting the Debtors' amended claim of exemptions. It also determined the allowability of the same exemption claim now asserted by the Debtors in their amended Schedule C. As the judgment satisfies all the elements of res judicata, this doctrine bars the Debtors from relitigating whether the proceeds from the personal injury lawsuit are exempt.

### 2. *Laches*

▆▆▆ Bad faith on the part of the debtor or prejudice to creditors are other grounds justifying a bankruptcy court's disallowance of a debtor's amended claim of exemption upon a timely filed objection to it. *Gold v. Guttman (In re Guttman),* 237 B.R. 643, 651 (Bankr.E.D.Mich.1999) (Rhodes, J.) (" 'Rule 1009 adopts a permissive approach that freely allows amendments to lists or schedules without court permission at any time during the case.' However, the court may disallow amendments based on a finding of bad faith or prejudice to creditors.") (quoting *In re Talmo,* 185 B.R. 637, 644 (Bankr.S.D.Fla. 1995)[3] and relying on *Lucius v. McLemore,* 741 F.2d 125, 126 (6th Cir.1984)); *In re Lundy,* 216 B.R. 609, 610 (Bankr. E.D.Mich.1998) (Rhodes, J.) (same).

**3.** The *Talmo* court followed the line of cases which held that "[b]ad faith or prejudice to creditors must be shown by clear and convincing evidence." *Talmo,* 185 B.R. at 645. As stated above, the Court rejects this standard and follows those cases which hold that the appropriate standard is preponderance of the evidence. *See supra* note 2.

Here, the Trustee alleges that allowing the Debtors' amended claim of exemptions will prejudice creditors. The Court agrees.

In *Talmo,* the court explained the type of prejudice that must be shown in order to deny a debtor's amended claim of exemptions:

> In determining whether to deny an amendment to schedules on the basis of prejudice, the focus is on the effect of allowing the amendment upon creditors and other parties in interest. Mere delay in filing an amendment, or the fact that an amendment if allowed will result in the exemption being granted, are not sufficient to show prejudice..... [P]rejudice may be established by showing harm to the litigating posture of parties in interest. If the parties would have taken different actions or asserted different positions had the exemption been claimed earlier, and the interests of those parties are detrimentally affected by the timing of the amendment, then the prejudice is sufficient to deny amendment. Moreover, an amendment is prejudicial if it impairs a trustee in the diligent administration of the estate.

185 B.R. at 645; *see also Stinson v. Williamson (In re Williamson),* 804 F.2d 1355, 1358 (5th Cir.1986) (explaining that the prejudice that justifies denying a debtor's amended claim of exemption is "the harm to the creditor's litigating posture because of some detrimental reliance on the debtor's initial position"). Allowing the Debtors' amended claim of exemptions under the circumstances of this case would prejudice the Trustee and the creditors.

The Trustee made it clear in her objection to the Debtors' original exemptions of the personal injury lawsuit that the value of the lawsuit and the value of each claimed exemption were vital to her decision on whether to pursue the state court litigation or whether the estate should abandon the asset. The Court's order denying the Debtors' claim of exemptions in the proceeds of the lawsuit, which made available for the benefit of the estate the entire amount of any monies recovered from the lawsuit, encouraged the Trustee to investigate further the value of the lawsuit. It is also reasonable to assume that, upon determining that the lawsuit had significant value, the fact that most of the proceeds from it would likely be available to satisfy creditors' claims prompted the Trustee to seek employment of special counsel to litigate the personal injury claim. Furthermore, it is fair to assume that 'had the Trustee determined that the Debtors were able to exempt nearly all of the proceeds from the lawsuit, she would not have expended time and money in pursuing the litigation. Additionally, the logical inference from the Trustee's statements in support of her motion to compromise the personal injury claim that (1) "the [D]ebtor will receive no funds from this settlement but all funds will be paid to his bankruptcy estate for the benefit of his creditors," and (2) "it is uncertain if the [D]ebtor will testify on behalf of the estate," is that the Trustee relied on these assumptions and took them into consideration in negotiating the settlement. Indeed, she said as much in her motion for approval of the settlement. Although it is impossible, without having been involved in the negotiations, to know how these facts impacted the Trustee's litigation strategy, it is clear that the Trustee would not have pursued the litigation in the first place if there were no benefit to the estate, and that her assumption that the Debtors would not in any way share in the proceeds from the lawsuit was relevant to her decision to settle the claim for $21,500. The Debtors' initial position of not pursuing their claimed exemptions in the proceeds of the lawsuit, therefore, caused the Trustee to take different actions and as-

sert different positions than she would have had the Debtors initially pursued their claimed exemptions. As the Trustee detrimentally relied on the Debtors' initial position in prosecuting the lawsuit and negotiating and evaluating the settlement, the Trustee has established the requisite prejudice to justify disallowing the amendment not only by a preponderance of the evidence, the applicable standard, but by the higher standard of clear and convincing evidence. Moreover, the Debtors' failure to provide the Trustee with the information she required for effective decision-making impaired the Trustee's effort to diligently administer the estate. For this additional reason, there is prejudice to the Trustee and creditors which justifies disallowing the Debtors' amended claim of exemptions.

The foregoing exception to the rule of free amendment of schedules is merely a way of explaining an application of the doctrine of laches. In one case the court considered the various approaches that courts have followed in determining whether to allow a debtor to amend his schedule of exemptions under Fed. R. Bankr P. 110,[4] the predecessor to Fed. R. Bankr.P. 4003, and concluded that, in applying Rule 4003, "upon objection by a party in interest, the court will look at the particular circumstances of each case to determine whether the interests of adverse parties may have vested by prejudice or laches." *Welborne,* 63 B.R. at 25. This Court, too, upheld a trustee's assertion that laches barred the debtors' amended exemption in U.S. savings bonds. It explained that "there is some point in time when a trust-

ee is justified in relying upon the debtor's claim for exemption and act accordingly." *In re Houck,* 9 B.R. 460, 463–64 (Bankr. E.D.Mich.1981) (Bobier, J.). The court held that the debtors' three-month delay in amending the claim of exemption in the bonds after relinquishing control of them to the trustee "would unduly prejudice the heretofore diligent performance of the trustee and the now vested rights of unsecured creditors." *Id.* (applying former Fed. R. Bankr.P. 403(b)). *See also In re Eldridge,* 15 B.R. 594, 595 (Bankr.S.D.N.Y. 1981) (explaining that "[t]o permit untimely amendments after the trustee has taken action in the best interests of the estate would simply frustrate the distribution scheme contemplated under the Bankruptcy Code which encourages trustees to act diligently and expeditiously" and holding that the debtors could not amend their schedules to claim the state exemptions instead of the federal exemptions "after the trustee had successfully contracted to sell their Florida house") (applying former Rule 110).

In *Vance v. United States,* 965 F.Supp. 944, 946–47 (E.D.Mich.1997) the court explained the equitable doctrine of laches in the following terms:

> According to BLACKS LAW DICTIONARY (5th Ed.), the "doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights." The doctrine of laches is designed to promote diligence and prevent enforcement of a stale claim. Dismissal of a claim on the grounds of laches requires that there be (1) unrea-

---

**4.** Former Fed. R. Bankr.P. 110 provided:
A voluntary petition, schedule, or statement of affairs may be amended as a matter of course at any time before the case is closed. The court may, on application or motion of any party in interest or on its own initiative, order any voluntary petition, schedule or

statement of affairs to be amended. Every amendment under this rule shall be filed in the same number as required of the original paper, and the court shall give notice of the amendment to such persons as it may designate.

sonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay. To establish a laches defense, both of the above prongs must be met. Only then can the Court weigh the delay and prejudice to determine whether justice requires that the claim be barred. When applying the doctrine of laches to bar a claim, the period of delay is measured from when the claimant had actual notice of the claim, or, would have reasonably been expected to inquire about the subject matter.

*Id.* (Internal quotation marks and citations omitted). The *Vance* court noted that in this circuit, there is a strong presumption that laches will not apply when the analogous statute of limitations has not run, *"absent compelling reasons." Id.* at 946. (Italics in original). Nevertheless, the court explained that in appropriate cases, "laches may apply irrespective of the statute of limitations." *Id.* Under the circumstances of this case, the doctrine of laches precludes the Debtors' assertion of their amended claim of exemptions despite their general right to amend their exemption claims "as a matter of course at any time before the case is closed" under Rule 1009(a).

The Debtors obviously knew about their right to claim exemptions in the proceeds of the personal injury lawsuit at least by the time they filed their original Schedule C claiming the lawsuit exempt. The Trustee's objection to their claim of exemptions put the Debtors on notice that they needed to act to preserve the claim (1) by asserting that Schedule C was deficient because it failed to list the value of the lawsuit and the values of the statutory exemptions and (2) by warning that if the Debtors did not amend their exemptions to cure the deficiencies, the Trustee was seeking an order disallowing their claimed exemptions "in their entirety." The notice L.B.R. 9014–1 requires to be sent out with the Trustee's objection also warns that if a response to an objection to a claimed exemption is not filed and served within fifteen days of service of the objection, the Court may disallow the claimed exemptions.[5] Given the notice the Debtors received regarding the ramifications of their failing to respond to the Trustee's objections, their failure to so respond was unreasonable and inexcusable. Although, at the time of the Trustee's objection, the Debtors could not have stated a sum certain that the lawsuit was worth, they certainly could have provided an estimate of its likely value. The Debtors had retained an attorney to pursue the litigation, and thus would necessarily have had to make a calculation, as would the attorney, as to the value of the lawsuit, in order to have

---

**5.** The relevant portion of this rule states:
(b) The motion shall be accompanied by:
. . .
(2) a notice to the respondent that the respondent has 15 days (20 days for matters covered by F.R.Bankr.P.2002(a)) after service to file and serve a response which complies with F.R.Civ.P. 8(b), (c), and (e), and that if such a response is not timely filed and served, the Court may grant the motion without a hearing in a form consistent with the form notice available from the clerk;
(c) If a response is not timely served, the movant may file a certification so stating together with the proposed order and a copy of the original proof of service of the motion. If the motion was served by mail, the movant shall not file a certification of no response until the 19th day after service, (or 24th day in the case of matters covered by F.R.Bankr.P.2002(a)) in order to comply with F.R.Bankr.P. 9006(f). The Court may enter the proposed order without a hearing. If the Court decides not to enter the proposed order, the Court shall promptly schedule a hearing, with notice to the movant and such other parties as it deems necessary.

determined that the possible recovery from the lawsuit would justify the costs and expenses that would be incurred in litigation. This is a calculation that must be made in deciding whether to pursue any litigation. Moreover, if the Debtors intended to claim all of the proceeds from the lawsuit as exempt, they could have easily indicated this by calculating the maximum exemption amount allowed under the statutory exemptions claimed. At the very least, the Debtors could have presented arguments to the Court as to why they could not or should not be required to provide this information. The Debtors' failure to respond in any way to the Trustee's objection after the Trustee had warned that if this information were not supplied she would ask that the exemptions be denied in their entirety justified the Court entering its order sustaining the Trustee's objection.

After entry of the order, the Debtors still failed to take any action to pursue their claimed exemptions of the lawsuit. They did not file a motion for reconsideration, or for relief from the order, nor did they appeal the order. They sat silently as the Trustee hired special counsel and pursued the litigation. It was not until July 30, 2001, after the Trustee had successfully negotiated a settlement of the lawsuit and had moved the Court to approve it, that the Debtors gave the Trustee, the creditors, and the Court the first hint that they intended to pursue an exemption claim in the proceeds from the lawsuit. This was almost seven months after the Trustee had objected to their claimed exemptions and six months after the Court had entered an order sustaining the Trustee's exemptions. The Debtors' delay in pursuing their claimed exemptions is categorically unreasonable and inexcusable. As the Court has already found that the Trustee suffered significant prejudice by this delay, the required elements of the laches doctrine are present in this case. Just as a cause of action filed within an applicable statute of limitations can be barred by the doctrine of laches, under the circumstances of this case, the permissive language of Rule 1009(a), generally allowing amendments until the case is closed, is no bar to the application of laches here.

### III. *Conclusion*

Because the Court's January 31, 2001 Order sustaining the Trustee's objection to the Debtors' claimed exemptions of the lawsuit and the legal system's interest in finality expressed in the doctrine of res judicata bar the Debtors' assertion of their amended claimed exemptions, as does the equitable doctrine of laches, the Court will sustain the Trustee's objection. The Court will enter an order consistent with this opinion.